**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| JOSELYN CHIONG, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br> v.<br><br> FRONTIER COMMUNICATIONS PARENT, INC.,<br><br>  Defendant. | CIVIL ACTION<br><br> Case No.<br><br> **CLASS ACTION COMPLAINT**<br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Joselyn Chiong ("Plaintiff"), on behalf of herself and all others similarly situated (collectively, "Class Members"), brings this Class Action Complaint against Defendant Frontier Communications Parent, Inc., ("Defendant" or "Frontier"), and alleges, upon personal knowledge as to her own actions and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1.     Plaintiff brings this class action against Defendant for its failure to properly secure, safeguard, and adequately destroy sensitive Personally Identifiable Information provided by and belonging to Plaintiff and Class Members, including, without limitation, names, dates of birth, and Social Security numbers ("PII"), that it had acquired and stored for its business purposes.

2.     Defendant is a Dallas-based telecommunications provider that offers internet, television, and other technology services to more than 2.5 million residential and business customers across twenty-five states.

3.     Defendant collected and stored Plaintiff's and Class Members' PII in connection with providing its telecommunication services to them.

1

4.      On no later than April 14, 2024, Plaintiff's and Class Members' sensitive PII was compromised. Defendant detected suspicious activity on its internal network systems, indicating that cybercriminals had gained entry to Defendant's computer systems, accessed the PII stored therein, and exfiltrated the information from those systems (the "Data Breach"). As a result of the Data Breach, the PII of Plaintiff and more than 750,000 Class Members was exfiltrated.

5.      On or around June 6, 2024, Defendant began notifying and sending out notice letters to Plaintiff and Class Members.  In the notice letters, Defendant admitted that the affected data included names, dates of birth, and Social Security numbers. It also acknowledged that Plaintiff's and Class Members' personal financial information was not included.

6.      The PII of Plaintiff and Class Members was compromised due to Defendant's negligent and/or careless acts and omissions and Defendant's utter failure to protect the PII of its current and former customers. Defendant failed to implement appropriate security safeguards and to even encrypt or redact the highly sensitive information.

7.      Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's and Class Members' PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

8.      As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unauthorized third party that undoubtedly seeks to profit off this disclosure by defrauding Plaintiff and Class Members in the future. Cybercriminals targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of

Plaintiff and Class Members.

9.      Defendant's failure to implement adequate and reasonable measures to protect Plaintiff's and Class Members' PII, failure to timely detect the Data Breach, failure to take adequate steps to prevent and stop the Data Breach, failure to disclose the material facts that it did not have adequate security practices in place to safeguard the PII, and failure to provide timely and adequate notice of the Data Breach—caused substantial harm and injuries to Plaintiff and Class Members across the United States.

10.     Until notified of the breach, Plaintiff and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for the rest of their lives.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C.§ 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the number of class members is over 100. Moreover, Plaintiff, numerous other Class Members, and Defendant are citizens of different states. Thus, minimal diversity exists under 28 U.S.C.§ 1332(d)(2)(A).

12.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business is in this district, conducts substantial business in this district, and the acts and omissions giving rise to Plaintiff's claims occurred in this district.

13.     Venue is proper under 28 U.S.C §§ 1391(a)(1), 1391(b)(1), 1391(b)(2), and 1391(c)(2) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this district, Defendant conducts substantial business in this district, and

Defendant's principal place of business is in this district and therefore resides in this district. Defendant is headquartered and does business in and/or has officers for the transaction of its customary business in this district.

## THE PARTIES

### *Plaintiff Joselyn Chiong*

14.    Plaintiff Joselyn Chiong is a resident and citizen of the state of Florida and intends to remain domiciled in and a citizen of the state of Florida.

15.    Plaintiff Chiong is a victim of the Data Breach.  Ms. Chiong received a letter dated June 6, 2024 from Defendant concerning the Data Breach. The letter stated that unauthorized actors gained access to Defendant's internal information technology systems containing her name, date of birth, and Social Security number.

### *Defendant Frontier Communications Parent, Inc.*

16.    Defendant Frontier Communications Parent, Inc. is a corporation organized under the state laws of Delaware with its principal place of business located at 1919 McKinney Avenue, Dallas, Texas 75201. The registered agent for service of process is Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218.

17.    All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## FACTUAL ALLEGATIONS

### *Defendant's Business*

18.    Defendant is a major U.S. telecommunications company that provides fiber-optic broadband internet, digital television, and other technology services to approximately 2.8 million

broadband customers. It is the largest pure-play fiber provider in the United States.[1]  Defendant's customers include both consumer and business subscribers across twenty-five states.

19.    Plaintiff and Class Members are current and former customers of Defendant who were required by Defendant to provide their highly sensitive PII to Defendant as a condition of obtaining Defendant's services. The information that Plaintiff and Class Members entrusted to Defendant is static, does not change, and can be used to commit myriad financial crimes.

20.    Defendant, in turn, stored that information in the part of Defendant's system that was ultimately affected by the Data Breach.

21.    Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without the required submission of PII, Defendant could not perform the services they provide.

22.    By obtaining, collecting, and storing Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was thereafter responsible for protecting Plaintiff's and Class Members' PII from unauthorized disclosure.

23.    Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for necessary business purposes only, and to make only authorized disclosures of this information.

24.    Through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements, Defendant made promises and representations to its customers, including Plaintiff and Class Members, that the PII collected from them as a condition of obtaining services would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after they were no longer

---

[1] *See* https://newsroom.frontier.com/about-frontier/ (last visited June 18, 2024).

required to maintain it.

25.     Indeed, Frontier's Communications Privacy Policy posted on its website states: "[w]e collect information you provide to us, such as your name and contact information, driver's license number, Social Security Number, and payment information."[2]  It further states: "[w]e use reasonable technical, administrative and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information we collect and store."[3]

26.     Plaintiff and Class Members relied on these promises of this sophisticated business entity. Plaintiff and Class Members provided their PII to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

27.     Plaintiff and Class Members value the confidentiality of their PII, have taken reasonable steps to maintain the confidentiality of their PII, and demand security to safeguard their PII.

***The Data Breach***

28.     On or around April 13, 2024, cybercriminals gained unauthorized access to Defendant's internal computer networks.[4]  Defendant detected the intrusion on or around April 14, 2024.[5]  Before that discovery, the cybercriminals accessed and exfiltrated the PII of 751,895 individuals, including that of Plaintiff and Class Members.[6]

---

[2] *See* Frontier Communications Privacy Policy, https://frontier.com/corporate/privacy-policy (last visited June 18, 2024).
[3] *Id.*
[4] *See* Office of the Maine Attorney General Data Breach Notifications, https://apps.web.maine.gov/online/aeviewer/ME/40/8391c11f-2946-414a-bdc1-6ceff4ae0caa.shtml (last visited June 18, 2024).
[5] *Id.*
[6] *Id.*

29.    The cybercriminals accessed and acquired files on Defendant's systems containing the unencrypted, unredacted PII of Plaintiff and Class Members, including their Social Security numbers.

30.    Defendant did not use reasonable security procedures and practices suitable, adequate, or appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing the access, exposure, and/or exfiltration of the PII of more than 750,000 individuals.

31.    On or about June 6, 2024, Defendant began notifying those affected by the breach, including Plaintiff and Class Members, by the Notice of Data Breach letter (the "Notice Letter"). Defendant posted a sample copy of the Notice Letter on the Maine Attorney General's website.[7] It is substantially similar to the one sent to Plaintiff and Class Members.

32.    The Notice Letter sent to Plaintiff and Class Members stated, in part:

> We are writing to inform you that some of your personal information may have been accessed by a third party during a recent cyber incident at Frontier Communications Parent, Inc. ("Frontier"). We take seriously the security of your data and are offering you one year of complimentary credit monitoring and identity theft resolution services to help protect your information. Please follow the instructions below to activate these services.
>
> **What happened?**
>
> On April 14, 2024, we detected unauthorized access to some of our internal IT systems. Our investigation identified your personal information among the data affected by this incident.
>
> **What personal information was involved?**
>
> The personal information involved includes your name, Date of Birth, and Social Security number. Based on our investigation, we do not believe your personal financial information was affected.

---

[7] *See supra* n. 4.

33.     Defendant admitted in the Notice Letter that an unauthorized third party accessed from its network systems sensitive information about current and former customers of Defendant, including, without limitation, names, birthdates, and Social Security numbers.

34.     The Notice Letter omitted the identity of the cybercriminals who perpetrated the Data Breach, the dates of the Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure a breach does not occur again. It is also deficient because Defendant fails to state definitively if it was able to contain or end the cybersecurity threat, leaving victims to fear whether the PII that Defendant continues to maintain is secure. To date, these omitted details have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII remains protected.

35.     Indeed, the Notice Letter amounts to no real disclosure at all. It fails to inform, with any degree of specificity, Plaintiff and Class Members of critical facts of the Data Breach. Without this information, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

36.     Despite Defendant's intentional opacity about the root cause of this incident, several facts may be gleaned from the Notice Letter, including: a) that this Data Breach was the work of cybercriminals; b) that the cybercriminals first infiltrated Defendant's networks and systems, and downloaded data from the networks and systems (i.e., exfiltrated data, or in layperson's terms "stole" data); and c) that once inside Defendant's networks and systems, the cybercriminals targeted information, including Plaintiff's and Class Members' Social Security numbers, for download and theft.

37.     Now that is has been stolen, unauthorized individuals can access the PII of Defendant's current and former customers. Plaintiff's and Class Members' exposed PII can be sold

on the dark web. Plaintiff is informed and believes that her information has already been placed onto the dark web.

38.    On or around June 2024, Ransomware gang, RansomHub, took credit for the Data Breach.  According to RansomHub, Defendant ignored its contact requests for a ransom payment for the PII, and after receiving no response from Defendant, RansomHub made available the unencrypted, unredacted PII of Plaintiff and Class Members for purchase on the dark web.

***Defendant Knew or Should Have Known of the Risks of Storing Valuable PII and of the Inadequacy of its Data Security***

39.    Cybercriminals regularly target companies like Defendant due to the highly sensitive information in their custody.

40.    It is well known among companies that store PII that sensitive information—such as the Social Security numbers stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers."[8]  The article further noted that "Many of them were caused by flaws in…systems either online or in stores."[9]

41.    The number of reported data breaches in the U.S. has increased in recent years, and have frequently captured the headlines. These high-profile attacks have targeted healthcare, finance, retail, manufacturing, and energy companies, including, Equifax, Yahoo, Facebook, Target, 23andMe, AT&T, and Marriott, among many others.

42.    At all relevant times, Defendant knew, or should have known, that it was collecting sensitive PII and that, as a result, its computer systems and the PII that it collected were attractive

---

[8] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen,* BUSINESS INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.
[9] *Id.*

targets for malicious actors.

43.     As a custodian of PII, Defendant knew, or should have known, the importance of safeguarding the PII entrusted to them by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

44.     The PII of individuals is highly valuable to criminals, fetching high prices on the dark web.  A recently published report offers detailed price breakdowns of different kinds of stolen information.[10]  For example, PII can be sold at a price ranging from $40 to $200.[11] Entire breached databases can be sold at a price ranging from to $900 to $4,500, and provide access to hundreds of thousands, if not millions, of records.[12]

45.     Social Security numbers are among the most sensitive kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[13]

---

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS, Oct. 16, 2019, https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited June 19, 2024).

[11]  *In the Dark*, VPNOVERVIEW, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited June 19, 2024).

[12] *Id.*

[13] Social Security Administration, *Identity Theft and Your Social Security Number*, available at: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited June 18, 2024).

46.    Changing or canceling a stolen Social Security number is a complicated process. Obtaining a new Social Security number requires significant paperwork and evidence of actual misuse. In other words, preventive action to defend against potential misuse of a Social Security number is not permitted; an individual instead must show evidence of actual, ongoing fraud to obtain a new number.

47.    Even then, obtaining a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[14]

48.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, in that situation, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—name, birthdate, and Social Security number.

49.    This data commands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[15]

50.    Stolen PII, like that involved in the Data Breach, can unlock multiple forms of

---

[14] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-shackers-has-millionsworrying-about-identity-theft (last visited June 18, 2024).
[15] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers,* IT WORLD, (Feb. 6, 2015), available at: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10xprice-of-stolen-credit-card-numbers.html (last visited June 19, 2024).

identity theft and fraud. Identity thieves can use stolen PII to obtain driver's licenses, collect government benefits, medical services, and housing, or even to give false information to police.[16] They can open financial accounts, apply for credit, and create fake forms of identification and sell them to other bad actors.[17]  Identity theft causes tens of billions of dollars of losses to victims in the U.S. annually.[18]

51.    The PII of Plaintiff and Class Members was taken by hackers to engage in identity theft and/or to sell it to other criminals who will purchase the PII for that purpose.

52.    The fraudulent activity resulting from the Data Breach may not come to light for years; there may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[19]

53.    At all material times, Defendant knew and understood that unprotected PII is valuable and highly sought after by criminal parties who seek to illegally monetize that PII through unauthorized access. Defendant also knew that any breach of its systems, and exposure of the

---

[16] *See* https://www.experian.com/blogs/ask-experian/what-should-i-do-if-my-drivers-license-number-is-stolen/ (last visited June 19, 2024).
[17] *Id.*
[18] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (last visited June 19, 2024) (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").
[19] Report to Congressional Requesters, GAO, at 29 (June 2007), available at: http://www.gao.gov/new.items/d07737.pdf (last visited June 18, 2024).

information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII was compromised.

54.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

***Defendant Had an Obligation to Protect Plaintiff's and Class Members' PII and Failed.***

55.     Despite such knowledge and the prevalence of public announcements of data breach and data security compromises, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class Members' PII from cyberattacks that Defendant should have anticipated and guarded against. Its failure to do so is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data, especially sensitive personal information.

56.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to those individuals and knew or should have known it was responsible for protecting and safeguarding that information from unauthorized access and intrusion.

57.     Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant had a legal duty to keep consumers' PII safe and confidential.

58.     Defendant had obligations created by the Federal Trade Commission Act ("FTCA"), contract, industry standards, and representations made to Plaintiff and Class Members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

59.     The Federal Trade Commission ("FTC") has promulgated numerous guides for

businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.,* 799 F.3d 236 (3d Cir. 2015).

60.    In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses.[20] The guideline advises companies to protect the personal customer information that they keep, appropriately dispose of personal information that is no longer needed, encrypt information stored on their networks, understand, identify, and assess their network's vulnerabilities, and implement policies to correct any security problems.[21] The guideline also advises that companies use an intrusion detection system to detect a breach as soon as it occurs, monitor all incoming traffic for signs that someone is trying to hack into the system, watch for large amounts of data being transmitted from the system to an unknown user, and have a response plan in place in the event of a breach.[22]

61.    The FTC also recommends that companies not maintain PII longer than is necessary for a legitimate business need, limit who has access to sensitive data, require "strong" passwords, use industry-tested methods for security, train employees to spot security vulnerabilities, and verify that third-party service providers implement and comply with reasonable security measures.[23]

---

[20] *See* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited June 19, 2024).
[21] *Id.*
[22] *Id.*
[23] *Id.*

62.     Defendant also had obligations required by various states' laws and regulations to protect Plaintiff's and Class Members' PII.

63.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PII in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

64.     Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the PII of Plaintiff and Class Members.

65.     Defendant owed a duty to Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that the PII was adequately secured and protected.

66.     Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the PII in its possession, including not sharing information with other entities who maintained substandard data security systems.

67.     Defendant owed a duty to Plaintiff and Class Members to implement processes that would immediately detect a breach in its data security systems in a timely manner.

68.     Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

69.     Defendant owed a duty to Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PII from theft because such an inadequacy would be a material fact in the decision to entrust this PII to

Defendant.

70.     Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

71.     Defendant owed a duty to Plaintiff and Class Members to encrypt and/or more reliably encrypt Plaintiff's and Class Members' PII and monitor user behavior and activity in order to identify possible threats.

72.     Data breaches are preventable. Defendant could have prevented this Data Breach by adequately monitoring, properly securing, encrypting and/or more securely encrypting Plaintiff's and Class Members' PII and destroying data, including old data that it had no legal right or responsibility to retain. According to the *Data Breach and Encryption Handbook*, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[24]

73.     The Data Breach resulted from a combination of insufficiencies and failures by Defendant.

74.     Defendant failed to properly implement basic data security practices, including those set forth by the FTC.

75.     Defendant also failed to follow some or all of the minimum standards and best practices in reasonable cybersecurity readiness, as established in the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's

---

[24] Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," in DATA BREACH AND ENCRYPTION HANDBOOK, at 17 (Lucy Thompson, ed., 2012).

Critical Security Controls (CIS CSC).

76.    Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to, among other things: properly maintain and safeguard its computer systems and data; audit, monitor, or ensure the integrity of its data security practices; maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks; adequately protect Plaintiff's and Class Members' PII; properly monitor its own data security systems for existing intrusions; protect against reasonably anticipated threats or hazards to the security of PII; adhere to industry standards for cybersecurity; incur the costs necessary to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Plaintiff's and Class Members' PII; disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class Members' PII; take standard and reasonably available steps to prevent the Data Breach; provide Plaintiff's and Class Members prompt, accurate, and adequate notice of the Data Breach.

### *Common Injuries and Damages*

77.    Plaintiff and Class Members have been damaged by the compromise of their PII in the Data Breach.

78.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Defendant's current and former customers.

79.    Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

80.    Plaintiff and Class Members have been forced to expend time dealing with the effects of the Data Breach and have incurred the loss of time and productivity mitigating the risk

and imminent threat of identity theft and fraud.

81. Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft. They may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

82. Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their PII as the information can be used to target such schemes more effectively to Plaintiff and Class Members.

83. Plaintiff and Class Members also suffered a loss of value of their PII when it was acquired by cybercriminals in the Data Breach.

84. Plaintiff and Class Members have suffered an invasion of privacy.

85. Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of its computer networks and protect Plaintiff's and Class Members' PII. Thus, Plaintiff and Class Members did not get what they paid for.

86. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. They are incurring and will continue to incur such damage in addition to any fraudulent use of their PII.

87. Although Defendant has offered its current and former customers identity monitoring services for a limited time through Kroll, the offered services are inadequate to protect

Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

***Plaintiff Joselyn Chiong's Experience***

88.     Plaintiff Joselyn Chiong is a resident of Lutz, Florida.

89.     Plaintiff Chiong was a customer of Defendant and provided Defendant with her PII in connection with obtaining Defendant's services.

90.     Plaintiff Chiong greatly values her privacy and PII. Prior to the Data Breach, Plaintiff Chiong took reasonable steps to maintain the confidentiality of her PII.

91.     Plaintiff Chiong received a "Notice of Data Breach" letter from Defendant, dated June 6, 2024, informing her of the Data Breach and advising her to take certain protective measures to help protect her information.

92.     Recognizing the present, immediate, and substantially increased risk of harm Plaintiff Chiong faces, Defendant offered Plaintiff Chiong a one-year subscription to a credit monitoring service. However, Plaintiff Chiong did not sign up for the program, as she was "skeptical" of Defendant's offer and already has credit monitoring through other services.

93.     Plaintiff Chiong's sensitive information, including her Social Security number, was compromised in the Data Breach. Upon receipt of the letter, Ms. Chiong experienced stress from concerns that she faces an increased risk of identity theft, fraud, and other types of monetary harm.

94.     The Data Breach has caused Plaintiff Chiong to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has not been forthright with information about the Data Breach.

95.     Plaintiff Chiong has also experienced an increase in spam phone calls since the Data Breach.

19

96.     As a result of the Data Breach, Plaintiff Chiong anticipates taking additional time-consuming, necessary steps to help mitigate the harm caused by the Data Breach, including continually reviewing her depository, credit, and other accounts for any unauthorized activity and reviewing credit reports and financial account statements for any indication of actual or attempted identity theft or fraud.

97.     As a result of the Data Breach, Plaintiff Chiong is at a present risk and will continue to be at increased risk of identity theft and fraud for her lifetime.

98.     Additionally, Plaintiff Chiong is very careful about sharing her PII. She has never knowingly transmitted unencrypted PII over the internet or any other unsecured source. Plaintiff Chiong stores any documents containing her PII in a safe and secure location or destroys the documents.

99.     Plaintiff Chiong would not have entrusted her PII to Defendant had she known of Defendant's lax data security policies and practices.

100.    Plaintiff Chiong has a continuing interest in ensuring that her PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff brings this class action individually on behalf of herself and on behalf of all members of the following classes of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Rule 23(a), (b)(2), and (b)(3) of the following Class:

**All individuals in the United States whose PII was accessed or exfiltrated during the Data Breach of Frontier Communications Parent, Inc., in 2024.**

102.    Excluded from the Class are Defendant and Defendant's parents, subsidiaries,

affiliates, officers, agents, and directors, any entities in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, as well as the judge(s) presiding over any aspect of this matter and the clerks, judicial staff, and immediate family members of said judge(s).

103.    Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

104.    **Numerosity.** The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. As noted above, at least 751,000 Class Members were impacted in the Data Breach. The Class is apparently identifiable within Defendant's records, and Defendant has already identified these individuals.

105.    **Commonality and Predominance**. Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

    a.  Whether Defendant engaged in the conduct alleged herein;

    b.  Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class Members' PII from unauthorized access and disclosure;

    c.  Whether Defendant was negligent in collecting, storing, and safeguarding Plaintiff's and Class Members' PII, and breached its duties thereby;

    d.  Whether Defendant's computer systems and data security practices used to protect Plaintiff's and Class Members' PII violated the FTC Act and/or state laws, and/or Defendant's other duties discussed herein;

    e.  Whether Defendant failed to adequately respond to the Data Breach, including

failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and Class Members;

f.   Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g.   Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

h.   Whether Plaintiff and Class Members suffered injury as a proximate result of Defendant's negligent actions or failures to act;

i.   Whether an implied contract existed between Class Members and Defendant with respect to protecting PII and privacy, and whether that contract was breached;

j.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

k.   Whether Plaintiff and Class Members are entitled to damages as a result of Defendant's wrongful conduct;

l.   Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and

m.   Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

106.   **Typicality**. Plaintiff's claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Defendant's failure to safeguard the PII, as described herein, and their claims are based on the same legal theories.

107. **Adequacy.** Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or in conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature, and they intend to prosecute this action vigorously.

108. **Superiority and Manageability.** Class treatment is superior to any other available means for the fair and efficient adjudication of this controversy, and there will be no material difficulty likely to be encountered in the management of this action as a class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for class members to individually seek redress from Defendant's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and Class Members)

109. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 100.

110. As a condition of obtaining internet, television, and other technology services from

Defendant, Plaintiff and Class Members were obligated to provide and entrust Defendant with certain PII, including their names, birthdates, and Social Security numbers.

111.    Plaintiff and Class Members entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

112.    Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed or obtained by unauthorized parties.

113.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of its current and former customers' PII involved an unreasonable risk of harm to Plaintiff and Class Members, including harm that foreseeably could occur through the criminal acts of a third party.

114.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and Class Members' information in Defendant's possession was adequately secured and protected.

115.    Defendant also had a duty to exercise appropriate practices to remove former customers' PII it no longer needed or was required to retain.

116.    Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Member's PII, and to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and Class Members.

117.    Defendant's duty to use reasonable security measures arose as a result of the special

relationship that existed between Defendant and Plaintiff and Class Members. That special relationship arose because Plaintiff and Class Members entrusted Defendant with their confidential PII, a mandatory step in obtaining services from Defendant.

118.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff and Class Members, to maintain adequate data security.

119.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

120.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and Class Members, the critical importance of adequately safeguarding that PII, and the necessity of encrypting PII stored on Defendant's systems.

121.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's wrongful conduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decision not to comply with industry standards for the safekeeping of Plaintiff's and Class Members' PII, including basic encryption techniques available to Defendant.

122.    Plaintiff and Class Members had no ability to protect their PII that was in, and remains in, Defendant's possession.

123.    Defendant was in a position to effectively protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

124.    Defendant had and continues to have a duty to adequately disclose that the PII of

Plaintiff and Class Members within Defendant's possession was compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

125.    Defendant has admitted that the PII of Plaintiff and Class Members was wrongfully accessed by an unauthorized third person as a result of the Data Breach.

126.    Defendant, through its actions and inaction, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and Class Members when the PII was within Defendant's possession or control.

127.    Defendant improperly and inadequately safeguarded the PII of Plaintiff and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

128.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect its current and former customers' PII in the face of increased risk of theft.

129.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former customers' PII.

130.    Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove former customers' PII it was no longer required to retain pursuant to regulations.

131.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

132.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

133.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in its continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

134.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

135.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII,

which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

136.    As a direct and proximate result of Defendant's negligence, Plaintiff is now at an increased risk of identity theft or fraud.

137.    As a direct and proximate result of Defendant's negligence, Plaintiff is entitled to and demand actual, compensatory, consequential, and nominal damages and injunctive relief to be determined at trial.

138.    Defendant's negligent conduct is ongoing, in that it still possesses Plaintiff's and Class Members' PII in an unsafe and insecure manner.

139.    Plaintiff and Class Members are entitled to injunctive relief requiring Defendant to: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
## NEGLIGENCE *PER SE*
**(On Behalf of Plaintiff and Class Members)**

140.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 100.

141.    Section 5 of the FTC Act prohibits "unfair…practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of businesses, such as Defendant, of failing to implement reasonable measures to protect PII.

142.    The FTC Act and related authorities form the basis of Defendant's duty. Defendant had a duty pursuant to the FTC Act and related authorities to implement industry protocols and

exercise reasonable care in protecting and safeguarding the PII of Plaintiff and Class Members when the PII was within Defendant's possession or control.

143.    Defendant breached its duty and violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the damages that would result to Plaintiff and Class Members.

144.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

145.    Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

146.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

147.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

148.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to

efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in its continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

149.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

150.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

151.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff is now at an increased risk of identity theft or fraud.

152.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff is entitled to and demand actual, compensatory, consequential, and nominal damages and injunctive relief to be determined at trial.

153.    Defendant's negligent conduct is ongoing, in that it still possesses Plaintiff's and

Class Members' PII in an unsafe and insecure manner.

154.    Plaintiff and Class Members are entitled to injunctive relief requiring Defendant to: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and Class Members)**

155.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 100.

156.    Through their course of conduct, Defendant, Plaintiff, and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

157.    Defendant required Plaintiff and Class Members to provide and entrust their PII as a condition of obtaining Defendant's services.

158.    Defendant acquired and maintained the PII of Plaintiff and Class Members, including names, birthdates, and Social Security numbers in connection with Defendant's provision of internet, television, and other technology services to Plaintiff and Class Members.

159.    Defendant offered to provide telecommunication services to Plaintiff and Class Members in exchange for payment and PII.

160.    Plaintiff and Class Members accepted Defendant's offer and provided their PII and paid money to Defendant.

161.    At the time Defendant acquired the PII of Plaintiff and Class Members, there was a meeting of the minds and a mutual understanding that Defendant would safeguard the PII and

not take unjustified risks when storing the PII.

162.    Through internal policies and other conduct and representations described in the preceding paragraphs, Defendant promised to comply with industry standards and to ensure that Plaintiff's and Class Members' PII would remain protected.

163.    Plaintiff and Class Members would not have entrusted their PII to Defendant had they known that Defendant would make the PII internet-accessible, not encrypt sensitive data elements such as Social Security numbers, and not delete the PII that Defendant no longer had a reasonable need to maintain.

164.    Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the PII only under conditions that kept such information secure and confidential.

165.    Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

166.    In collecting and maintaining the PII of Plaintiff and Class Members, Defendant entered into contracts with Plaintiff and Class Members requiring Defendant to protect and keep secure the PII of Plaintiff and Class Members.

167.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

168.    Defendant breached the contracts they made with Plaintiff and Class Members by

failing to safeguard and protect Plaintiff's and Class Members' PII and by failing to provide accurate and prompt notice to them that their PII was compromised as a result of the Data Breach.

169.    Defendant further breached its contracts with Plaintiff and Class Members by failing to (i) encrypt or tokenize the sensitive PII of Plaintiff and Class Members, (ii) delete such PII that Defendant no longer had reason to maintain, (iii) eliminate the potential accessibility of the PII from the internet where such accessibility was not justified, and (iv) otherwise review and improve the security of the network system that contained such PII.

170.    The covenant of good faith and fair dealing is an element of every contract. All contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

171.    The duty of good faith and fair dealing is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

172.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

173.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and Class Members have suffered, and will continue to suffer, ongoing,

imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; additional time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, credit freezes, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

174.    As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members are at an increased risk of identity theft or fraud.

175.    As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members are entitled to and demand actual, consequential, and nominal damages and injunctive relief, to be determined at trial.

## COUNT IV
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and Class Members)

176.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 100.

177.    This claim is plead in the alternative to the breach of implied contract claim above.

178.    Plaintiff and Class Members conferred a benefit upon Defendant by purchasing services and also providing their PII to Defendant as a condition of obtaining those services.

179.    Defendant accepted or knew of the benefits conferred upon them by Plaintiff and Class Members and has accepted and retained those benefits by accepting and retaining the PII entrusted to it. Defendant profited from Plaintiff's and Class Members' retained data and used Plaintiff's and Class Members' PII for business purposes.

180.    Defendant, prior to and at the time Plaintiff and Class Members entrusted their PII to Defendant for the purpose of obtaining Defendant's services, caused Plaintiff and Class Members to reasonably believe that Defendant would keep such PII secure.

181.    Defendant was aware, or should have been aware, that reasonable consumers would have wanted their PII kept secure and would not have contracted with Defendant, directly or indirectly, had they known that Defendant's information systems were substandard for that purpose.

182.    Defendant was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiff's and Class Members' decisions to seek services from Defendant.

183.    Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiff and Class Members made their decisions to make purchases, engage in commerce therewith, and seek services or information.

184.    Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Plaintiff and Class Members the ability to make a rational and informed purchasing decision and took undue advantage of Plaintiff and Class Members.

185.    If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their PII, they would have entrusted their PII at Defendant or obtained services at Defendant.

186.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII; these cost savings increased the profitability of the services.

187.    As a result of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the services they received with reasonable data privacy and security practices and procedures, and the services they received without unreasonable data privacy and security practices and procedures.

188.    Defendant was unjustly enriched at the expense of Plaintiff and Class Members, as Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class Members; however, Plaintiff and Class Members did not receive the benefit of their bargain because Defendant failed to secure Plaintiff's and Class Members' PII and, therefore, did not fully compensate Plaintiff or Class Members for the value that their PII provided.

189.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and other identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the current and former customers' PII in its continued possession; and (viii) present and future costs in the form of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the compromise of PII as a result of the Data Breach for the remainder of the

lives of Plaintiff and Class Members.

190.    Under the circumstances, and since Defendant's profits, benefits, and other compensation were obtained improperly, Defendant is not legally or equitably entitled to retain any of the benefits, compensation, or profits that Plaintiff and Class Members conferred upon it.

191.    Plaintiff and Class Members have no adequate remedy at law against Defendant.

192.    Plaintiff and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

193.    Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all Class Members, request judgment against Defendant and that the Court enter an order:

a.  Certifying the Class as defined herein and appointing Plaintiff and her counsel to represent the Class;

b.  Requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

c.  Instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

d.  Enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class

Members;

e.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members;

f.  Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.  requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii.  requiring Defendant to delete, destroy, and purge the PII of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.  prohibiting Defendant from maintaining Plaintiff's and Class Members' PII on a cloud-based database;

vi.  requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any

problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.     requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other areas of Defendant's systems;

x.      requiring Defendant to conduct regular database scanning and securing checks;

xi.     requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII, as well as protecting the PII of Plaintiff and Class Members;

xii.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting PII;

xiv.    requiring Defendant to implement, maintain, regularly review, and revise as

necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to adequately educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third parties, as well as the steps affected individuals must take to protect themselves;

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and, for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to Class Counsel, and to report any material deficiencies or noncompliance with the Court's final judgment;

g. Awarding restitution and damages, including actual, compensatory, consequential, nominal, exemplary, and punitive damages, as allowed by law in an amount to be determined at trial;

h. Awarding reasonable attorneys' fees, costs, and litigation expenses, as allowed by law;

i. Awarding prejudgment and post-judgment interest on all amounts awarded; and

j. Granting such other and further relief as this Court may deem just and proper.

Dated: June 25, 2024                    Respectfully submitted,


                                        By:  */s/ Kristina N. Kastl_____*
                                             **Kristina N. Kastl**
                                             Texas Bar No. 24025467
                                             eservice@kastllaw.com
                                             kkastl@kastllaw.com

                                        **KASTL LAW, P.C.**
                                        Samantha Best
                                        Texas Bar No. 24131258
                                        sbest@kastllaw.com
                                        4144 N. Central Expressway, Suite 1000
                                        Dallas, Texas 75204
                                        Phone: (214) 821-0230


                                        Stephanie A. Casey (*pro hac vice* forthcoming)
                                        Florida Bar No. 97483
                                        **COLSON HICKS EIDSON, P.A.**
                                        255 Alhambra Circle, Penthouse
                                        Coral Gables, Florida 33134
                                        Phone: (305) 476-7400
                                        scasey@colson.com


                                        ***Counsel for Plaintiff and the Putative Class***